## Oscar Samuels et al. v. John Fuller.

1. INSTRUCTIONS—*To Find for the Defendant if the Introductory Part of the Declaration Stands Alone.*—An instruction to the jury that "all that portion of the plaintiff's declaration contained in the first page thereof, and to the end of the first paragraph of the second page of said declaration, are what is called in the law practice ' inducement,' that is, allegations which are merely introductory to the statements of the plaintiff's alleged cause of action, and even though the jury may believe from the evidence that such inducement and introductory part of the declaration and the allegations therein contained are true, yet the court instructs you that they do not constitute a cause of action in this case, and standing alone the plaintiffs could not lawfully recover, and if they so stand alone in this case you should find the defendant not guilty," is improper, as by it the jury is left to determine whether the introductory part of the declaration stands alone, and if they did so determine, then they were directed to find the defendant not guilty.

Trespass on the Case, for fraud and deceit. Appeal from the Circuit Court of DeWitt County; the Hon. WILLIAM G. COCHRAN, Judge presiding. Heard in this court at the May term, 1902. Reversed and remanded. Opinion filed November 24, 1902.

R. E. GRAY and I. A. BUCKINGHAM, attorneys for appellants.

WARNER & LEMON, E. B. MITCHELL, HERRICK & HERRICK and GEORGE K. INGHAM, attorneys for appellee.

OPINION PER CURIAM.

In July, 1897, Leon Samuels, the owner of 200 acres of land in DeWitt county, died, leaving no children, but a widow, Mary E. Samuels, four brothers, Oscar, Francis, George and Charles, a sister, Mrs. Laura Huffman, and his father and mother, as his heirs at law. One hundred and twenty acres of the land was burdened with an annuity of $150 in favor of his father and mother. His brother Oscar and his widow were appointed administrators of his estate, and as such employed appellee as their attorney to assist them in its settlement. He was largely indebted at the time of his death, and after the personal property was exhausted, there was found to be a deficiency indebtedness

of about $3,500.    The administrators were advised that the
heirs of Leon Samuels would have to pay the deficiency or
that the administrators would have to sell sufficient of the
land under order of court to pay it.    After conferring
together it was concluded to avoid an administrator's sale,
and the brothers and sisters decided to buy the interest of
the widow in the land and pay her half of the indebted-
ness deficiency out of the purchase price.

They agreed upon a purchase price with the widow of
$50 per acre, and appellee was employed to prepare a deed
conveying her interest to Oscar, Francis, Charles and Mrs.
Huffman.    As they did not have the ready money to pay
the indebtedness deficiency and the widow, it was neces-
sary to borrow nearly $7,000 for that purpose.    Charles
had, in the meantime, arranged to buy the interest of his
brother George.    Application was made to Mr. John
.Warner, and others engaged in banking at Clinton, with a
view to borrowing the money and giving a mortgage on
the land.    After satisfying themselves that they could
obtain the money, they arranged with appellee to meet at
his office and have him prepare the necessary papers.    In
accordance with that arrangement, they met at appellee's
office shortly afterward.    They claim that after they reached
there, appellee left the office and in a brief time returned
and stated that he had seen Warner and that Warner would
not let them have the money with the land as security, and
that no one else would let them have it.    They claim that,
relying upon the truth of that statement, they then aban-
doned the idea of buying the property, and under appellee's
advice, instructed him to have the land sold under order of
court.    Appellee claims that the scheme to buy was aban-
doned because appellants told him that two of their wives
had refused to sign a mortgage.

Within a few weeks thereafter, appellee bought the
interest of the widow.    Subsequently quit-claim deeds were
executed between him and the other parties in interest,
and appellee then sold the part received by him for $75 per
acre.    Appellants claim that after that had occurred they

learned that appellee had deceived them in his representations that Warner and others had refused to loan them the money with which to purchase the interest of their sister-in-law and pay off the indebtedness deficiency.  This suit was brought to recover damages for the alleged fraud and deceit practiced upon them by appellee while acting as their attorney, whereby they were deprived of the profits they would otherwise have received from a purchase of the land.  This suit was commenced in the name of George, Francis, Charles W. and Oscar Samuels and Mrs. Huffman, but was subsequently dismissed as to all except Oscar and Francis.  A trial by jury resulted in a verdict and judgment in favor of appellee.

It devolved upon appellants, as plaintiffs in this case, to establish three facts : first, that they retained appellee as an attorney to advise them and to assist them in purchasing the interest of their sister-in-law in the land in question; second, that appellee falsely represented that the person or persons from whom they expected to borrow the money with which to purchase the land would not loan them the money, and that the only course to be pursued was to institute proceedings in the court to sell the land; third, that they, relying upon the representation of their attorney, took his advice and were deceived thereby, and made no further effort to obtain the money.

We do not hesitate in saying the evidence in the record amply establishes the proposition that appellee was retained as an attorney for the purposes stated, and that the relation of attorney and client existed between them.  As to the second proposition, there is a sharp conflict in the testimony and we do not care to express ourselves in relation thereto, because the case will have to be submitted to another jury. There was such a conflict that accuracy of instructions was very important.  Among numerous instructions given for the defendant, was the following :

" The court instructs the jury that all that portion of the plaintiff's declaration contained on the first page thereof and to the end of the first paragraph of the second page of

said declaration, are what is called in the law practice 'inducement,' that is, allegations which are merely introductory to the statements of the plaintiff's alleged cause of action; and even though the jury may believe from the evidence that such inducement and introductory portion of the declaration and the allegations therein contained are true, yet, the court instructs you that they do not constitute a cause of action in this case, and, standing alone, the plaintiffs could not lawfully recover, and if they so stand alone in this case you should find the defendant not guilty."

Whatever may have been the object of the attorney who drafted this instruction, it certainly could not be understood by a jury as having any other office than to direct them to find for the defendant if the portion of the declaration referred to as inducement stood by itself. They were left to determine whether the introductory part of the declaration stood alone, and if they did so determine, then they were directed to find the defendant not guilty. It is difficult to understand how the jury, following this instruction, could have found otherwise than that the defendant was not guilty.

For the error of the court in giving it, the judgment will be reversed and the cause remanded for another trial.

Reversed and remanded.